# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 98-41004
Summary Calendar

WESTINGHOUSE POWER GENERATION,
A DIVISION OF CBS CORPORATION,

Plaintiff-Appellee,

versus

SABAH SHIPYARD SDN. BHD., ET AL.,

Defendants,

SABAH SHIPYARD SDN. BHD.,

Defendant-Appellant.

Appeal from United States District Court
for the Southern District of Texas
(USDC No. G-98-CV-34)

May 19, 1999

Before POLITZ, BARKSDALE and STEWART, Circuit Judges.

PER CURIAM::[*]

This case arises from a breach of contract dispute between plaintiff-appellee Westinghouse

Power Generation ("Westinghouse") and defendant-appellant Sabah Shipyard SDN BHD ("Sabah").

Westinghouse filed a complaint in federal district court alleging breach of contract and requesting

three forms of relief: (1) monetary damages of approximately $83 million; (2) interest, costs, and

attorney's fees; and (3) pre-judgment writs of garnishment against three entities indebted to Sabah.[2]

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

[2]Westinghouse asked the court to issue writs of garnishment against Industrial Maritime Carriers (Bahamas), Inc, Intermarine Inc., and L & C III, Ltd. (the "Garnishees"). The Garnishees owe Sabah approximately $10 million as a result of a final judgment in favor of Sabah issued in Sabah Shipyard SDN BHD. v. M/V Harbel Tapper, et al., 984 F. Supp. 569 (S.D. Tex 1997), appeal docketed, No.

On March 2, 1998, the district court granted Westinghouse's application for the writs of garnishment after holding an *ex parte* hearing. Westinghouse posted a $1 million bond, and the writs were thereafter issued and served. On July 2, 1998, Sabah filed a motion to dismiss, in which it objected to the writs of garnishment and to the district court's jurisdiction. More importantly, in making this motion Sabah also argued that the district court should stay this action pending the outcome of an arbitration proceeding already occurring in London. On July 10, 1998, Westinghouse also moved to stay the case pending arbitration.

On July 15, 1998, the district court ordered that the case be stayed and administratively closed pending arbitration. The district court did not explicitly rule on Sabah's objections regarding jurisdiction or to the writs of garnishment. On July 22, 1998, Sabah moved to set aside the stay. The district court did not rule on this motion. On August 11, 1998, Sabah filed this appeal. It urges that we reverse the district court's decisions to: (1) issue a writ of garnishment against several entities indebted to Sabah; and (2) to stay the remainder of the case pending arbitration.

As explained below, neither of these interlocutory orders are immediately appealable. Therefore, we DISMISS Sabah's appeal for lack of appellate jurisdiction.

## DISCUSSION

Sabah sets forth two theories as to why we should have appellate jurisdiction. First, it contends that we have appellate jurisdiction over final orders under 28 U.S.C. § 1291, and that the district court's order staying the case pending arbitration was final. Second, it submits that we have appellate jurisdiction over orders refusing to dissolve or modify an injunction under 28 U.S.C. § 1292(a)(1), and that the writs of garnishment issued in this case were injunctions. We address each claim in turn.

## I

97-41417 (5th Cir. December 9, 1997).

Initially, Sabah contends that we have appellate jurisdiction over the district court's order staying the case pending arbitration because we have appellate jurisdiction over final orders under 28 U.S.C. § 1291. In response, Westinghouse submits the district court's order staying the case was not final but was instead interlocutory, and thus not immediately appealable.

We confronted a similar question in Altman Nursing Co. v. Clay Capital Corp., 84 F.3d 769 (5th Cir. 1996). The district court in that case had issued an order compelling arbitration. See id. at 770. We observed that, under 9 U.S.C. §16, an order compelling arbitration is appealable only if it is a final order, and that interlocutory orders compelling arbitration are not appealable. See id; see also Sphere Drake Ins. Plc v. Marine Towing , Inc., 16 F.3d 666, 668 (5th Cir.), cert. denied 513 U.S. 871 (1994) ("We consider an order final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (citations and internal quotation marks omitted). To distinguish between these two sets of claims, we noted that courts look to whether the arbitration claim is independent or is embedded in other proceedings. See id.

> An independent proceeding is one in which the only issue before the court is the dispute's arbitrability. An embedded claim, on the other hand, arises in a suit in which one party or the other seeks some relief other than an order requiring or prohibiting arbitration (typically some relief concerning the merits of the allegedly arbitrable dispute).

Id. at 770-771. (citations and internal quotation marks omitted). Applying this distinction, we held that the claim for arbitration in that case was an embedded one, and thus not yet appealable, because the parties sought relief on a number of underlying claims. See id. at 771.

Using this same approach, we find that we do not have appellate jurisdiction over the district court's order staying the case. Westinghouse's complaint, like the one in Altman, seeks relief on an underlying claim, i.e. the breach of contract claim.

Sabah's argument to the contrary is not without force, but is ultimately unpersuasive. Sabah correctly points out that the only reason we do not have appellate jurisdiction over the appeal is because of the breach of contract claim. Sabah insists, however, that the breach of contract claim is

3

a sham, and that the actual reason Westinghouse filed this breach of contract claim was to shelter the garnishment issue from immediate appellate review.[3] With this background in mind, Sabah complains that the arbitration will handle the breach of contract issue in this case, and that there are no real issues remaining to be litigated in federal court. Sabah exclusively relies upon our decision in Sphere Drake for support of this contention.

We cannot accept this argument for two reasons. First, Sphere Drake provides no support whatsoever for Sabah's argument. In Sphere Drake, there were two separate legal actions between the appellee and the appellant. See 16 F.3d at 667. In the first of these actions, Sphere Drake proved unsuccessful in having the court order arbitration. See id. at 667. Consequently, it filed a "separate action" to stay litigation and compel arbitration. See id. The district court granted this relief. See id. On appeal, we held that we had appellate jurisdiction over the district court's order staying litigation and compelling arbitration because "the decision to compel arbitration did not arise from a motion in an ordinary district court action wherein other claims were stayed pending arbitration." Id. at 668. This is in stark contrast to the procedural posture of the instant appeal, which did arise from a motion in an ordinary district court action wherein other claims were stayed pending arbitration.

Second, our decision in Altman compels us to reject Sabah's argument that there are no real issues remaining to be litigated in federal court because the only claim Westinghouse brings has been sent to arbitration. In Altman, one of the parties argued that we should have appellate jurisdiction in cases when the district court sends *all* of the claims to arbitration. See 84 F.3d at 771. According to this reasoning, the order to arbitrate in such cases is a final order because it completely ends the litigation. See id. We rejected this argument, however, because we found it preferable to maintain

<hr>

[3]For this assertion, Sabah relies on a single paragraph in Westinghouse's complaint. There, Westinghouse explained that it did not mean to delay the arbitration by filing this lawsuit, but rather to protect its interest in the breach of contract claims it has against Sabah through the initiation of a garnishment proceeding. Westinghouse acknowledged that under Texas law it could not obtain a writ of garnishment unless a judicial proceeding was pending. Westinghouse further explained that, once the writs of garnishment were issued and all of the parties had answered the lawsuit, it planned to ask the court to compel arbitration.

a rigid distinction between independent claims and embedded claims. See id. Applying this rigid distinction to the case at bar, we reject Sabah's analogous attempt to carve out an exception to this rule.

## II

Next, Sabah argues that we have appellate jurisdiction over the district court's decision to deny its motion to vacate the writs of garnishment. It notes that we have appellate jurisdiction under 28 U.S.C. § 1292(a)(1) over a district court's order refusing to dissolve or modify an injunction. Sabah contends that the writs of garnishment issued by the district court are, in effect, injunctions, and therefore fall within § 1292(a)(1). We disagree. Even if we were to hold that a pre-judgment writ of garnishment is an injunction for purposes of 28 U.S.C. § 1292(a)(1),[4] we would still not find jurisdiction because Sabah has not satisfied the prerequisites to such review, such as a showing on irreparable harm.

It is well settled that to obtain appellate jurisdiction over an interlocutory order under 28 U.S.C. § 1292(a)(1), the order must have serious, perhaps irreparable consequences which can only be effectively challenged by immediate appeal. See Sierra Club v. Glickman, 67 F.3d 90, 94 (5th Cir. 1995). Sabah points to two potential bases for immediate appeal. First, it indicates that it will suffer serious financial problems due to the "dire" financial situation throughout Asia and particularly in Malaysia. Second, it contends that the writs of garnishment have hindered its efforts to settle unrelated cases. This is because the parties served with the writs of garnishment are indebted to Sabah as a result of a federal lawsuit, now on appeal before this court, in which Sabah was awarded damages.

---

[4]While we do not need to reach the issue, we cannot help but notice that several of our sister Circuits have rejected similar efforts in the past. Cf.,e.g., Orange City v. Hong Kong & Shanghai Banking Corp., 52 F.3d 821, 825-27 (9th Cir. 1995) (holding that lis pendens are not injunctions under § 1292(a)(1), and noting that several courts have refused to construe attachments, the category of relief including pre-judgment writs of garnishment, as injunctions under § 1292(a)(1)).

5

Neither of these "facts," however, are sufficient to obtain appellate jurisdiction. Initially, a vague claim to a market-wide financial crisis is simply not specific enough. Moreover, to the extent Sabah claims it is strapped for cash in Asia, Sabah's argument proves that the writs of garnishment were necessary so that Sabah would not snatch its sole asset in the Southern District of Texas beyond the jurisdiction of the district court. Next, as Westinghouse points out, the writs of garnishment have been in place for a year now, and the serious harm predicted by Sabah has yet to materialize. Finally, Westinghouse has protected Sabah by filing a million dollar bond – making the point that any injury to Sabah would be financial and not irreparable. As such, we decline to find jurisdiction under § 1292(a)(1).

## CONCLUSION

For the reasons set forth above, we DISMISS Sabah's appeal.