# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 6, 2025

Lyle W. Cayce
Clerk

No. 24-30694
Summary Calendar

———————

Husam Odeh,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Tyrone Butler, *In His Individual Capacity*; Kirt Arnold, *in his individual capacity*; Donald Juneau,

*Defendants—Appellees/Cross-Appellants*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-13212

———————————————————————

Before Davis, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant/Cross-Appellee Husam Odeh appeals the summary dismissal of his selective-enforcement and conspiracy claims under the civil-rights laws, 42 U.S.C. §§ 1983, 1985(3). Because the issues here

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

were previously presented to and decided by a Louisiana state court, and were essential to its judgment, we AFFIRM.

Odeh is Palestinian-American. On October 18, 2018, he drove his son to an elementary-school cross-country meet on the Mississippi River batture in Jefferson Parish, Louisiana. There were hundreds of children participating in the race and a large number of cars vying for limited parking along River Road, which runs parallel to the Mississippi River levee. Perhaps because he was running late, Odeh illegally parked his pickup truck on the upslope of the levee, alongside two unoccupied cars. Lieutenant Kirt Arnold was patrolling the levee that morning and issued three loud-speaker announcements directing the three parked cars to move. When he saw movement in Odeh's truck, Lt. Arnold drove to its driver's side and informed Odeh face-to-face that he was parked illegally. Odeh did not immediately move his truck, though he later did—to another illegal spot, also on the levee—and exited his truck to observe the race. Lt. Arnold again advised Odeh he'd parked illegally and asked him to move his truck from the levee. Odeh refused and became agitated, which prompted Lt. Arnold to call his supervisor, Lieutenant Tyrone Butler, and to seek additional backup.

Thus began an extended interaction between Odeh and multiple law-enforcement officers with the East Jefferson Levee District Police. Odeh admits to calling Lt. Butler an "idiot" and "asshole" during the episode. For his part, Lt. Butler, who is Black, admits to saying, "I don't know how you treat the police in the country you come from, however, the police are treated with respect in this country." In the end, Lt. Butler cited Odeh for operating a motor vehicle on the levee under Louisiana Revised Statute § 38:213, and for failing to obey traffic-officer directives under Revised Statute § 32:56. Odeh contends the citations were the result of selective enforcement of traffic laws due to his race, religion, and national origin. He filed a complaint

with the Levee District's Office of Internal Affairs, but refused to be interviewed. The IA investigation closed without action.

On October 21, 2019, Odeh filed this civil-rights action, alleging selective enforcement and a conspiracy among the officers to subvert the IA investigation with perjury. He named as defendants Lts. Arnold and Butler and former Captain Donald Juneau, who spearheaded the IA investigation, as well as their municipal employer. The district court stayed the case pending the state-court trial on the traffic citations.

That two-day bench trial occurred in late May 2021 before the First Parish Court in Jefferson Parish. In his defense, Odeh asserted his citations were the result of discriminatory selective enforcement. He also contended "the disobedience citation was issued by a levee police officer who had accosted [him] racially, [and] fabricated evidence in his Internal Affairs statement to investigators[.]" The trial judge rejected both defenses for reasons stated on the record, found Odeh guilty, and fined him $50 for each citation. Odeh appealed. The Louisiana Fifth Circuit Court of Appeal wrestled with Odeh's selective-enforcement and conspiracy defenses, confirmed neither had merit, and affirmed the First Parish Court's convictions.[1] The Louisiana Supreme Court denied supervisory review on March 15, 2022.[2]

Odeh's civil-rights case resumed on June 2, 2022. Once discovery closed, the individual defendants moved for summary judgment, arguing Odeh's claims were barred by *Heck v. Humphrey*[3] or precluded under the Full

---

[1] *Odeh v. State*, 21–657, *19–21 (La. App. 5 Cir. 12/23/21), 335 So. 3d 977, 990–91.

[2] *Odeh v. State*, 22–148 (La. 3/15/22), 334 So. 3d 396 (mem.).

[3] 512 U.S. 477, 486–87 (1994).

No. 24-30694

Faith and Credit Statute,[4] and that Odeh could not defeat the individual defendants' qualified immunity. Odeh resisted the motion, relying primarily on the same evidence used in the state trial. The district court concluded Odeh's claims were neither *Heck*-barred nor precluded by the Full Faith and Credit Statute, but that Odeh's evidence could not defeat the officers' qualified immunity. It thus granted the motion, dismissed Odeh's federal claims with prejudice, and declined to exercise supplemental jurisdiction over Odeh's state-law claims. This appeal followed. Our review is de novo.[5]

We agree with the district court that Odeh's claims aren't necessarily *Heck*-barred[6] but conclude Louisiana's law of issue preclusion, made operative by the Full Faith and Credit Statute, bars Odeh from relitigating his state-court defenses here.[7] Both his state-court defenses and civil-rights claims present the same issues—alleged bias by levee-district officers in selectively enforcing the traffic laws and their supposed corruption of the ensuing IA investigation—with no material differences in their factual predicates. We thus ascribe the same effect to the state court's ruling as would a Louisiana state court.[8]

---

[4] *See* 28 U.S.C. § 1738.

[5] *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1146 (5th Cir. 1993) ("Where, as here, the movants for summary judgment advanced several independent arguments in district court in support of their motions for summary judgment, we will affirm if any of those grounds support the district court's decision.").

[6] *See Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017); *Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010).

[7] *See* § 1738; *Morales v. New Orleans City*, No. 23-30340, 2024 WL 3026779, *3–6 (5th Cir. June 17, 2024) (per curiam) (finding defense raised in prior state administrative hearing preclusive in Title VII retaliation case).

[8] *Neptune Shipmanagement Servs. PTE v. Dahiya*, 15 F.4th 630, 637 (5th Cir. 2021) ("'"Federal courts must 'give preclusive effect to state-court judgments whenever the

Louisiana Revised Statute § 13:4231 bars re-litigation of "any issue actually litigated and determined if its determination was essential to that judgment." The district court imposed a third element, as well—perfect party identity in the initial and subsequent proceedings.

This case satisfies both statutory conditions. First, Odeh's defenses were actually litigated, as shown by the state trial- and appellate-court records. Second, the state trial and appellate courts had to resolve Odeh's defenses to render their decisions, making resolution an essential determination to the judgment. Odeh argues the trial judge's reasons for judgment constitute obiter dictum about selective *prosecution*, not judicial factfinding about selective *enforcement* (the claim at issue here). That the trial judge misspoke during his verbal reasons for judgment—a misstatement Odeh himself makes in brief to this court—does not negate his findings that the officers "acted in a neutral and detached manner" and did not "abuse . . . this Gentleman, because of his ethnicity, his nationality. . . . [T]here's no evidence of discrimination or prejudice." These are findings of fact on defenses Odeh chose to submit to the trial and appellate courts for decision and, hence, were essential to the state-court judgment.[9] Finally, contrary to the third element the district court applied, Louisiana recognizes the use of

---

courts of the State from which the judgments emerged would do so.'" (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980))).

[9] As to which determinations are essential to a judgment, "[t]he appropriate question . . . is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment." RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982); *see Raspanti v. Keaty* (*In re Keaty*), 397 F.3d 264, 271 (5th Cir. 2005) (recognizing that "§ 4231 is modeled on federal doctrine and the RESTATEMENT OF JUDGMENTS"). Odeh further argues we may not credit the court of appeal's opinion, which found no merit to his defenses, because Louisiana law bars appellate factfinding in criminal cases. We don't agree the opinion overstepped in this respect and find Odeh's argument immaterial given the state trial court's factfinding and later denial of supervisory review by the Louisiana Supreme Court.

No. 24-30694

defensive issue preclusion by those who weren't parties to the prior proceeding.[10] This means the parties invoking preclusion—here, the individual defendants—need not have been parties to the state criminal proceedings against Odeh to invoke issue preclusion.

The state proceedings leave us no room to infer that Odeh's treatment and citation by the levee-district officers or the IA investigation was impelled by racial bias. Thus, Odeh cannot prove an element essential to his claims—that the levee-district officers harbored discriminatory animus against him, then conspired to cover up that bias in the IA investigation that followed.[11]

AFFIRMED.

---

[10] *Morales*, 2024 WL 3026779 at *5 ("[The party-identity] requirement is concerned only with the identity of the party *against* whom preclusion is invoked. In other words, the party *invoking* preclusion need not be involved in the prior proceeding." (citing *Williams v. Orleans Levee Dist. & Its Bd. of Comm'rs*, 09–2637, *1–2 (La. 4/5/10), 31 So. 3d 1048, 1049 (per curiam))).

[11] *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam) (identifying discriminatory intent as an element of § 1983 equal-protection claim); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) (limiting § 1985(3) claims to conspiracies motivated by race-based animus).